406 So.2d 1206 (1981)
Graham K. HINNANT, Appellant,
v.
AMERICAN NATIONAL BANK AND TRUST COMPANY OF FT. LAUDERDALE, a National Banking Association, Appellee.
No. 81-615.
District Court of Appeal of Florida, Fourth District.
November 25, 1981.
Peter Kneski of Stern & Kneski, Miami, for appellant.
Keith J. Kanouse of Fleming, O'Bryan & Fleming, Fort Lauderdale, for appellee.
HERSEY, Judge.
By this appeal from a final judgment on the pleadings, appellant questions the trial court's determination that his affirmative defense did not avoid his obligation to appellee bank. We affirm the trial court's decision.
Appellant borrowed certain sums of money from appellee bank over a period of years and eventually defaulted on his obligation to repay. Suit was instituted by the bank which ultimately resulted in a summary judgment in its favor. While the matter reposed in the appellate court it was agreed by the parties that an affirmative defense raised by appellant should be revisited by the trial court in view of certain developments. Jurisdiction was relinquished for the limited purpose of reconsideration of the affirmative defense. Subsequently the appeal was dismissed.
Again by stipulation of the parties the trial court vacated the judgment which had been appealed "being specifically advised in the premises and specifically being advised in the terms and conditions of the stipulation filed in the District Court of Appeal." The order vacating the summary judgment and final judgment continued by expressly providing that the cause was to continue "for a consideration of the remaining factual questions concerning the effect and application" of a regulation which formed the basis for appellant's affirmative defense.
Subsequently the trial court, determining that the affirmative defense did not avoid the original obligation, entered judgment on the pleadings in favor of appellee, bank. The final judgment which followed is the subject of this appeal.
Initially we are confronted with the procedural question of whether judgment on the pleadings was appropriate in view of appellant's affirmative defense. We think it was not. However, it appears that vacation of the Summary Judgment and Final Judgment was either partial or conditional or both. In any event the appropriate procedural device would have been reinstatement of the summary judgment to be followed, as here, by a final judgment. On remand this housekeeping chore should pose no particular problem.
We turn, then, to a consideration of appellant's affirmative defense.
*1207 It is appellant's contention that the promissory notes evidencing his obligation are rendered unenforceable by the fact that some part of the indebtedness was incurred in a transaction which constituted a violation of a federal regulation establishing margin requirements for loans which like appellants, are secured by securities. A brief explanation of the regulation, its background, purpose and judicial interpretation is essential to an understanding of the issue thus presented.
To prevent the excessive use of credit for the purchase or carrying of securities, Congress directed the Federal Reserve Board to "prescribe rules and regulations with respect to the amount of credit that may be initially extended and subsequently maintained on any security (other than an exempted security)." 15 U.S.C. § 78g (a) (§ 7, Securities Exchange Act of 1934). In compliance with this legislative mandate, the Federal Reserve Board issued Regulation T (which controls the amount of credit that may be extended by brokers and dealers) and Regulation U (which controls the amount of credit that may be extended by banks). 12 C.F.R. §§ 220.1-220.8 and §§ 221.1-221.4. Under these regulations, a level of margin requirements was established so that a lender could extend credit only up to a "maximum loan value" of the securities being used to secure the loan. Thus, the "margin" is the difference between the "maximum loan value" and the market value of the securities.
The Securities Exchange Act contains no provision for a private cause of action for violation of margin requirements. However, the Act does state:
Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder, and every contract (including any contract for listing a security on an exchange) heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of, any provision of this chapter or any rule or regulation thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract, . .. . 15 U.S.C. § 78cc(b).
In the late sixties and early seventies, several courts concluded that a private cause of action for violation of margin regulations is implied in this and other sections of the Act. Serzysko v. Chase Manhattan Bank, 290 F. Supp. 74 (S.D.N.Y. 1968), aff'd. 409 F.2d 1360 (2d Cir.1969), cert. denied 96 U.S. 904, 90 S.Ct. 218, 24 L.Ed.2d 180 (1969); Pearlstein v. Scudder & German, 429 F.2d 1136 (2d Cir.1970), cert. denied 401 U.S. 1013, 91 S.Ct. 1250, 28 L.Ed.2d 550 (1971). This right of action included the assertion of margin violations as an affirmative defense since a violator may not enforce its claimed contractual rights nor recover any claimed indebtedness. See Goldenberg v. Bache and Co., 270 F.2d 675 (5th Cir.1959) and Stonehill v. Security National Bank, 68 F.R.D. 24 (S.D.N.Y. 1975).
In Pearlstein v. Scudder & German, supra, (Pearlstein I), the court reasoned that the primary purpose of Section 7 (15 U.S.C. §§ 78g) was protection of the economy and that "private actions by market investors are a highly effective means of protecting the economy as a whole from margin violations by [lenders]... ." Pearlstein I, supra at 1140. The court further stated that the danger of permitting a windfall gain to an unscrupulous investor was far outweighed by the deterrent effect that the threat of a damage suit might have. Many cases in this area have relied on Pearlstein I or its reasoning. See e.g. Spoon v. Walston & Co., 478 F.2d 246 (6th Cir.1973); McCormick v. Esposito, 500 F.2d 620 (5th Cir.1974) cert. denied 420 U.S. 912, 95 S.Ct. 834, 42 L.Ed.2d 842 (1975).
Subsequent to Pearlstein I, Section 7 was amended to add subsection (f) (15 U.S.C. § 78g(f)), making it illegal for any person to obtain, receive or enjoy an unlawful extension of credit. The amendment was implemented by Regulation X which prohibits any person from obtaining credit when to do so would cause the lender to violate *1208 Regulations T. and U. 12 C.F.R. §§ 224.1-224.6. This regulation and the 1970 statutory amendment occurred after the transactions in the instant case and therefore are not directly applicable. However, the amendment prompted widespread reanalysis of Pearlstein I principles.
On remand, the Pearlstein court noted that in its first opinion emphasis was placed on the fact that the federally imposed margin requirements forbade the extension of undue credit but did not forbid the acceptance of such credit. The court then stated that the effect of the 1970 amendment was to cast doubt on the continued viability of the rationale of its prior holding. Pearlstein v. Scudder & German, 527 F.2d 1141 (2d Cir.1975) (Pearlstein II). As stated in Schy v. Federal Deposit Insurance Corp., 465 F. Supp. 766, 772-773 (E.D.N.Y. 1977):
True, all of the transactions involved here antedated the addition of subsection (f). Thus, any denial of an implied right of action cannot turn on Congress' latest pronouncement. Freeman v. Marine Midland Bank-New York, supra, [494 F.2d 1334] at 1337 n. 4. However, a fair reading of the amendment is a reaffirmance by the Congress of its refusal to extend protection to investors through a grant of a right of action against lenders violating the margin requirements. (Footnote omitted).
The Schy court also explored the effect of Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), on the rationale of Pearlstein I. In Cort four factors relevant to the determination of whether a private remedy is implicit in a statute were enumerated as follows:
(1) whether the plaintiff is one of the class for whose especial benefit the statute was enacted;
(2) whether there is any indication, either explicit or implicit, of a legislative intent to create or deny such a remedy;
(3) whether judicial implication is consistent with the underlying purposes of the legislative scheme; and
(4) whether the cause of action is one traditionally relegated to state law.
Applying these guidelines, the Schy court concluded that Section 7 was expressly enacted for macroeconomic objectives and not for the "especial" benefit of the investing public; that Congress considered the need to protect the small investor but failed to provide a right of action, thereby implying an intent to deny such relief; and that a private right of action to enforce the margin regulations is both inconsistent with legislative goals and unnecessary to ensure Congress' purposes in adopting credit limitations. Thus, under Schy, there is no implied right of action for violation of margin requirements. We agree with Schy.
Accordingly we affirm the judgment in favor of appellee but remand to permit the trial court to enter the judgment in appropriate form.
AFFIRMED.
BERANEK, J., and OWEN, WILLIAM C., Jr., Associate Judge (Retired), concur.